# 𝔍𝔫 𝔱𝔥𝔢 𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 ℭ𝔬𝔲𝔯𝔱 𝔬𝔣 𝔉𝔢𝔡𝔢𝔯𝔞𝔩 ℭ𝔩𝔞𝔦𝔪𝔰

No. 11-263C
(Filed December 20, 2012)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**ALPENA MARC, LLC,**

        Plaintiff,

   v.

**THE UNITED STATES,**

        Defendant.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Contracts; RCFC 56(a), summary judgment; lease of real property; base year for calculating tax adjustments; contract reformation; drafting error.

J. Benjamin Dolan, Troy, MI, for plaintiff.

Renee A. Gerber, Washington, DC, with whom was Acting Assistant Attorney General Stuart F. Delery, for defendant.

**MEMORANDUM OPINION AND ORDER**

**MILLER**, Judge.

    This case is before the court after argument on cross-motions for summary judgment. Plaintiff, a lessor of real property to the Government, seeks a declaratory judgment that 2005 is the base year under the tax adjustment clause of the lease for purposes of calculating the Government's obligation to pay increased property taxes through 2025. Plaintiff contends that the lease unambiguously provides that 2005 is the base year for real estate taxes on property that was improved during that year. Defendant counters that the lease was patently ambiguous regarding whether 2005, as inserted in the lease, was the base year for calculating tax adjustments if the full assessment was not effective until 2006. As plaintiff failed to advise the contracting officer about this patent ambiguity, defendant argues that the lease terms should be construed against plaintiff. Defendant also contends that plaintiff cannot recover payment for increased property taxes due in 2006 and 2007 because plaintiff failed to submit invoices and proof of tax payments within the time period stipulated in the lease.

# FACTS

The following facts are undisputed, unless otherwise noted. On October 3, 2003, the National Oceanic and Atmospheric Administration ("NOAA") issued Solicitation for Offers No. MI0001 (the "SFO"). Def.'s Br. filed June 15, 2012, App. at A1. The solicitation requested lease proposals for approximately 21,000 square feet of office and special purpose space in Alpena, MI, to house NOAA's Thunder Bay National Marine Sanctuary and Underwater Preserve. Id. The solicitation stated that "[a]ll improvements in the base building, lobbies, common areas, and core areas shall be provided by the Lessor, at the Lessor's expense[,]" and that the lease rate "shall include . . . property financing (exclusive of Tenant Improvement), insurance, taxes, management, profit, etc. for the building." Id., App. at A7. Paragraph 3.4 of the solicitation – a "Tax Adjustment" clause – provided, in relevant part:

> A. Real estate taxes, as referred to in this paragraph, are only those taxes which are assessed against the building and/or the land upon which the building is located . . . .
>
> B. Base year taxes as referred to in this paragraph are 1) the real estates [sic] taxes for the first 12-month period coincident with full assessment or 2) may be an amount negotiated by the parties that reflects an agreed upon base for a fully assessed value of the property.
>
> C. The term "full assessment" as referred to in this paragraph means that the taxing jurisdiction has considered all contemplated improvements to the assessed property in the valuation of the same. Partial assessments for newly constructed projects or for projects under construction, conversion, or renovation will not be used for establishing the Government's base year for taxes.
>
> D. The Lessor shall furnish the Contracting Officer with copies of all notices which may affect the valuation of said land and buildings for real estate taxes thereon, as well as all notices of a tax credit, all tax bills, and all paid tax receipts, or where tax receipts are not given, other similar evidence of payment . . . , and a proper invoice . . . of the tax adjustment including the calculation thereof, for each year that real estates [sic] taxes are incurred during the lease term or any extension thereof. All such documents are due within 10 calendar days of receipt except that the proper invoice and evidence of payment shall be submitted within 60 calendar days after the date the tax payment is due from the Lessor to the taxing authority. **FAILURE TO SUBMIT THE PROPER INVOICE AND EVIDENCE OF PAYMENT**

**WITHIN SUCH TIME FRAME SHALL BE A WAIVER OF THE RIGHT TO RECEIVE PAYMENT RESULTING FROM AN INCREASED TAX ADJUSTMENT UNDER THIS PARAGRAPH.**

E.  The Government shall 1) make a single annual lump sum payment to the Lessor for its share of any increase in real estate taxes during the lease term over the amount established as the base year taxes or 2) receive a rental credit or lump sum payment for its share of any decreases in real estate taxes during the lease term below the amount established as the base year taxes.  The amount of lump sum payment or rental credit shall be based upon evidence of valuation and payment submitted by the Lessor to the Contracting Officer in accordance with subparagraph D.

> 1.  In the event of an increase in taxes over the base year, the Lessor shall submit a proper invoice of the tax adjustment including the calculation thereof together with evidence of payment to the Contracting Officer.  **THE GOVERNMENT SHALL BE RESPONSIBLE FOR PAYMENT OF ANY TAX INCREASE OVER THE BASE YEAR TAXES ONLY IF THE PROPER INVOICE AND EVIDENCE OF PAYMENT IS SUBMITTED BY THE LESSOR WITHIN 60 CALENDAR DAYS AFTER THE DATE THE TAX PAYMENT IS DUE FROM THE LESSOR TO THE TAXING AUTHORITY.**

Id., App. at A11 (boldface and capitalization in original).

On October 15, 2003, Alpena Marc, LLC ("Alpena Marc" or "plaintiff"), submitted an initial offer for NOAA to lease approximately 20,100 square feet of a building located at 500 West Fletcher Street, Alpena, MI (the "Property").  Id., App. at A91, A93-94.  The Property was part of a former paper mill and required substantial renovations to meet NOAA's requirements for the Property.  Pl.'s Resp. to Def.'s Prop. Findings of Uncontr. Fact No. 5, filed Aug. 10, 2012.  In a cover letter accompanying Alpena Marc's initial offer, Alpena Marc's manager, Jeff J. Konczak, wrote that the offer was based upon a "'NET' lease scenario" and that the "'NET' lease assumes that [NOAA] shall be responsible for all operating costs."  Def.'s Br. filed June 15, 2012, App. at A91.  Alpena Marc's initial offer included GSA Form 1364, which listed the "Base Year Taxes" at $2,325.00 for a "Base Year" of 2004.  Id., App. at A93.  Subsection 18 of GSA Form 1346 referred to Line 28 on GSA Form 1217 – Lessor's Annual Cost Statement.  Id.  On Line 28 of GSA Form 1217 submitted with the initial offer, Alpena Marc stated that real estate taxes were "GOVT. COST."  Id., App. at A96.

3

On February 4, 2004, Michael Goldfinger of Booz Allen Hamilton sent NOAA's Contracting Officer, Rosa Asberry, a facsimile transmission describing Mr. Konczak's conversations with Mr. Goldfinger and Jeff Gray, Manager, Thunder Bay National Marine Sanctuary and Underwater Preserve. Pl.'s Br. filed July 17, 2012, Ex. 3. The fax states that "Mr. Konczak is unclear as to the intent of the Tax Adjustment clause, and suggests a discussion for clarification with EASC [the Eastern Administrative Support Center for NOAA]." Id. Sometime after Alpena Marc submitted its initial offer but before it signed the lease, Ms. Asberry wrote in an undated Price Negotiation Memorandum (the "PNM") that "Mr. Konczark [sic] was called to discuss his initial offer. Mr. Konczark [sic] was told that the Government would not be responsible for maintenance on his building, nor would [the Government] pay his real estate taxes." Def.'s Br. filed June 15, 2012, App. at A140. The PNM further noted that "[t]he Government would pay any increase over the base year taxes, and the base year is the year the lease is effective." 1/ Id. The parties dispute whether the PNM accurately recounts Ms. Asberry's conversations with Mr. Konczak. Pl.'s Resp. to Def.'s Prop. Findings of Uncontr. Fact No. 13, filed Aug. 10, 2012. The parties could not provide insight on whether any further negotiations or discussions took place regarding base year taxes before the lease and supplemental lease agreement were executed. 2/ Id.

Alpena Marc submitted a Best and Final Offer ("BAFO") on May 25, 2004. Id., App. at A142-74. The BAFO stated that Alpena Marc would provide a "'full service' lease to [NOAA] rather than a 'net lease' as outlined in the initial SFO of October 3, 2003." Id., App. at A144. Alpena Marc explained that it had agreed to the change "to ensure that [NOAA] would be able to budget more exactly in their process, especially with regard to annual variable costs." Id. Although the BAFO stated that the "[b]ase [y]ear" was 2005, 3/ it included a version of GSA Form 1364 that did not include a real estate taxes

---

1/ The PNM does not state when the discussion with Mr. Konczak occurred. The PNM recounts the actual negotiations chronologically, however, and therefore appears to indicate that the discussion took place before Alpena Marc submitted its Best and Final Offer on May 25, 2004. See Def.'s Br. filed June 15, 2012, App. at A140.

2/ The PNM states that an additional "meeting was held with Mr. Konczak[] on August 31, 2004 for clarification of his proposal." Def.'s Br. filed June 15, 2012, App. at A141. The PNM does not indicate, however, whether the parties discussed real estate taxes during the August 31, 2004 meeting. Id.

3/ Mr. Konczak explained in his deposition that the "[b]ase [y]ear" listed in the BAFO referred to the base year for rent as well as for taxes. Deposition of Jeff Konczak, Mar. 14, 2012, at 73:4-9 ("Konczak Dep."), Pl.'s Prop. Findings of Undisp. Fact, filed July 27, 2012, Ex. 7 at 73.

4

provision. 4/ Id., App. at A144, A147-48. The form utilized the following provision: "Initial term rate includes: (1) $ ___/sq. ft. for operating cost base rate and (2) $ ___/sq. ft. for base year taxes." Id., App. at A147. Alpena Marc filled in "0" for the base year taxes. Id.

Alpena Marc's BAFO also included GSA Form 1217, which listed the contractor's costs for "[r]eal [e]state [t]axes" at $40,000.00 for the entire building and $34,000.00 for the Government-leased area. Id., App. at A149. Mr. Konczak does not recall how he arrived at the $40,000.00 and $34,000.00 figures. Konczak Dep. at 62:7-14, Pl.'s Prop. Findings of Undisp. Fact, filed July 27, 2012, Ex. 7 at 62. Although GSA Form 1217 does not state that the Government would reimburse Alpena Marc for the real estate taxes, see Def.'s Br. filed June 15, 2012, App. at A149, Mr. Konczak testified to his understanding that the "real estate taxes [listed on GSA Form 1217] were to be reimbursed," see Konczak Dep. at 57:19-25, Def.'s Resp. to Pl.'s Resp. to Def.'s Prop. Findings of Uncontr. Fact, filed Aug. 15, 2012, Ex. 1 at 57.

On September 16, 2004, NOAA awarded Lease No. 062KWC04039 (the "Lease") to Alpena Marc. Def.'s Br. filed June 15, 2012, App. at A175. The Lease provides that the Government will pay for tenant improvements by reimbursing Alpena Marc in a lump sum at the start of the Lease. Id., App. at A177. Paragraph 17 of the Lease states: "In accordance with Paragraph 3.4 Tax Adjustment, the base year for real estate taxes will be 2005." 5/ Id., App. at A178. The Lease also incorporates the SFO, including ¶ 3.4. Id., App. at A176. The Lease initially had a term of May 1, 2005, through April 30, 2025. Id., App. at A175. Because renovations of the Property were delayed, the parties signed a

---

4/ Alpena Marc's October 15, 2003 initial offer and May 24, 2005 BAFO inexplicably included different versions of GSA Form 1364. Compare Def.'s Br. filed June 15, 2012, App. at A93-94 (GSA Form 1364 (Rev 1/98)), with Def.'s Br. filed June 15, 2012, App. at A147-48 (GSA Form 1364 (Rev 5/98)).

5/ In its October 3, 2012 order, the court observed that the Lease failed to incorporate ¶ 17. See Order entered Oct. 3, 2012, at 4. Paragraph 8 of the Lease states that it incorporates "Sheet 2A containing Paragraphs 10 through 15." Def.'s Br. filed June 15, 2012, App. at A176. Paragraph 17, however, is located on Sheet 2b – not Sheet 2a. See id., App. at A178. Despite the language of ¶ 8, the parties do not dispute that the Lease incorporates ¶ 17. See Pl.'s Resp. to Def.'s Prop. Findings of Uncontr. Fact No. 22, filed Aug. 10, 2012. Defendant advised that both parties intended to incorporate ¶¶ 10-21 on Sheets 2a and 2b and that the exclusion of Sheet 2b in ¶ 8 was a "scrivener's error." See Def.'s Br. filed Oct. 31, 2012, at 4 n.2. Defendant requested that the court reform the Lease accordingly, which the court accomplishes by this order.

supplemental lease agreement on September 21, 2005, amending the Lease term to August 1, 2005, through July 31, 2025. Id., App. at A267.

The City of Alpena, MI (the "city"), is the taxing authority for real estate taxes on the Property, which are due twice a year – on July 1 and December 1. Id., App. at A318, A327-28. In 2004, before the Lease was effective and before the Property was renovated, the city assessed the Property for real estate tax purposes. See id., App. at A324-26. Based upon that assessment, the real estate taxes (less special assessments) that plaintiff paid on the Property in 2005 totaled $1,161.62. Id.; see also Def.'s Resp. to Pl.'s Prop. Findings of Uncontr. Fact No. 14, filed Aug. 6, 2012. In December 2005 the city assessed the fully renovated Property for taxes that would be due in 2006. Def.'s Br. filed June 15, 2012, App. at A327-28. Based upon the December 2005 assessment, the total amount for real estate taxes due in 2006, including special assessments, was $74,307.11. Id. The total amount for real estate taxes due in 2007, including special assessments, was $74,766.34. Id., App. at A337-38.

On or about January 7, 2008, plaintiff submitted an invoice to NOAA for the Property taxes due in 2006. Id., App. at A333. Plaintiff also submitted an invoice to NOAA on or about October 20, 2009, for the Property taxes due in 2007. Id. On March 3, 2011, plaintiff submitted a claim to Ms. Asberry pursuant to the Contract Disputes Act of 1978, 41 U.S.C. §§ 7101-7109 (Supp. IV 2010), requesting that Ms. Asberry declare "that Alpena [Marc] is entitled to be reimbursed for the amount of increased taxes incurred above the negotiated Base Year (2005) for each year under the lease, and further that Alpena [Marc] is entitled to $142,200.46 resulting from increased taxes paid for 2006 and 2007." Id., App. at A340. Ms. Asberry denied the claim, save for $459.23, which represented the difference between the real estate taxes due in 2007 and the real estate taxes due in 2006. Id., App. at 344; see also Def.'s Resp. to Pl.'s Prop. Findings of Uncontr. Fact No. 33, filed Aug. 6, 2012. She explained that "[t]he base year for tax adjustment is usually the year in which the contract commence [sic], when a fully [sic] assessment has been made." Id., App. at A344. Because the taxes due on July 1, 2006 – $74,307.11 – reflected a "full assessment" of the Property, Ms. Asberry considered $74,307.11 to be the amount of base year taxes. Id.

On April 27, 2011, plaintiff filed its complaint in the United States Court of Federal Claims. Plaintiff first moved for summary judgment on October 31, 2011. On defendant's motion the court entered an order on January 29, 2012, permitting the parties to conduct discovery before the resumption of dispositive briefing. Plaintiff filed a renewed motion for summary judgment seeking a declaratory judgment that the initial base year for real estate taxes under the Lease is 2005. See Pl.'s Br. filed Apr. 30, 2012, at 12. Defendant cross-moved for summary judgment on June 15, 2012, contending that plaintiff seeks to take advantage of a patent ambiguity. See Def.'s Br. filed June 15, 2012, at 15-16. After briefing was completed on August 15, 2012, the court entered an order requesting the parties

6

to file supplemental briefs addressing the issues of unilateral mistake, mutual mistake, and the purported incorporation of ¶ 17 into the Lease. See Order entered Oct. 3, 2012, at 4; see also supra note 5. Supplemental briefing was completed on October 31, 2012, and argument was held on November 13, 2012.

## DISCUSSION

I. Standard of Review

"Summary judgment is appropriate when examined in a light most favorable to the non-movant, the record indicates 'that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Flexfab, L.L.C. v. United States, 424 F.3d 1254, 1259 (Fed. Cir. 2005) (quoting predecessor rule to RCFC 56(a)).

When resolving a motion for summary judgment, the court may neither make credibility determinations nor weigh the evidence and seek to determine the truth of the matter. Cf. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (holding that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are . . . not [functions] of a judge . . . ruling on a motion for summary judgment . . ."); Rockwell Int'l Corp. v. United States, 147 F.3d 1358, 1361 (Fed. Cir. 1998) (holding that "[i]n determining the propriety of summary judgment, credibility determinations may not be made . . ."). The purpose of summary judgment is "'to secure the just, speedy and inexpensive determination of every action.'" Celotex Corp. V. Catrett, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1). However, if "there is reason to believe that the better course would be to proceed to a full trial" a trial court may deny summary judgment. Anderson, 477 U.S. at 255.

II. Incorporation of Sheet 2b

Paragraph 8 states that the Lease incorporates "Sheet 2A containing Paragraphs 10 through 15." Def.'s Br. filed June 15, 2012, App. at A176. However, the Lease did not include a provision that incorporates ¶¶ 17 to 21 on Sheet 2b. See id., App. at A176-78. Both parties initialed Sheet 2b, see id., App. at A178, and intended to incorporate ¶¶ 17 to 21 on Sheet 2b. See Pl.'s Resp. to Def.'s Prop. Findings of Uncontr. Fact No. 22, filed Aug. 10, 2012; Pl's Br. filed Oct. 16, 2012, at 3 n.1; Def.'s Br. filed Oct. 31, 2012, at 4 n.2. Defendant advised that the exclusion of Sheet 2b in ¶ 8 was a scrivener's error. See Def.'s Br. filed Oct. 31, 2012, at 4 n.2. Because the record reflects that both parties intended to incorporate Sheet 2b into the Lease, the court finds that ¶ 8 contained a drafting error and corrects the error to reform the Lease to incorporate ¶¶ 17 to 21 on Sheet 2b. See Am. Emp'rs Ins. Co. v. United States, 812 F.2d 700, 705 (Fed. Cir. 1987) ("In general,

reformation is an appropriate remedy when the contract terms do not accurately reflect the intention of the parties at the time of drafting." (citation omitted)).

III. Genuine issue of material fact

Plaintiff seeks a declaratory judgment that the base year for real estate tax adjustment purposes is 2005. See Pl.'s Br. filed Apr. 30, 2012, at 1, 12. Plaintiff argues that ¶ 17 of the Lease unambiguously identifies 2005 as the base year. Id. at 10-11. Plaintiff points out that Ms. Asberry drafted ¶ 17 in response to plaintiff's BAFO, which noted that the base year would be 2005. Id. at 11. Although plaintiff suggests that the inclusion of the year 2005 in ¶ 17 may have resulted from Ms. Asberry's ignorance regarding how the city assessed real property, plaintiff insists that the court should not reform an unambiguous term in the Lease based upon Ms. Asberry's unilateral mistake. Id. at 12.

Defendant contends that the Lease is ambiguous with respect to the base year for calculating tax adjustments. Def.'s Br. filed June 15, 2012, at 12-14. Although the second clause of ¶ 17 states that "the base year for taxes will be 2005[,]" the first clause recites that it is "[i]n accordance with Paragraph 3.4 Tax Adjustment." Id. at 12-13. Defendant relies on ¶ 3.4, which defines "[b]ase year taxes" as "the taxes for the first 12-month period coincident with full assessment" or "an amount negotiated by the parties[.]" See id. at 12. Paragraph 3.4 also clarifies that a "full assessment" must be based upon all contemplated improvements and that partial assessments for projects under renovation "will not be used for establishing the Government's base year for taxes." Id. Because the city's full assessment of the Property in December 2005 did not affect the taxes due in 2005, defendant emphasizes that the two clauses of ¶ 17 are incompatible and therefore constitute a patent ambiguity. Id. at 15-16. The patent ambiguity should be resolved against plaintiff, defendant urges, because plaintiff failed to satisfy its duty to question the contracting officer regarding the meaning of ¶ 17. See id. (citing Triax Pac., Inc. v. West, 130 F.3d 1469, 1474-75 (Fed. Cir. 1997)). Defendant also urges the court to resolve the ambiguity in defendant's favor because ¶ 3.4 more closely reflects the parties' intent regarding payment of real estate taxes. Id. at 16.

The court agrees with defendant that ¶ 3.4.B. defines "base year taxes" as the real estate taxes for the twelve-month period that corresponds to the first full assessment of the renovated property. See Def.'s Br. filed June 15, 2012, App. at A187. The taxes due in the year 2005 were based upon the city's assessment in 2004, which occurred before the Property was renovated. See id., App. at A324-26. Although ¶ 3.4 by its terms does not contain a patent ambiguity, ¶ 17 may have created a patent ambiguity in the Lease regarding the base year for calculating real estate tax adjustments.

8

This case, however, does not fit neatly into the doctrine of patent ambiguity. Mr. Goldfinger's February 4, 2004 fax reflects that plaintiff did not understand the meaning of ¶ 3.4 and sought clarification from NOAA. See Pl.'s Br. filed July 17, 2012, Ex. 3. Although Ms. Asberry's PNM indicates that the parties subsequently discussed the issue of real estate taxes, the parties dispute whether the PNM accurately recounts Ms. Asberry's conversations with Mr. Konczak. Pl.'s Resp. to Def.'s Prop. Findings of Uncontr. Fact No. 13, filed Aug. 10, 2012. The PNM states that Mr. Konczak was told that the Government would "not pay any increase over the base year taxes[,]" Def.'s Br. filed June 15, 2012, App. at A140, and Ms. Asberry later testified in her deposition that Mr. Konczak "was notified that we would not pay taxes on his building; only the increase[,]" Deposition of Rosa Asberry, Feb. 23, 2012, at 58:6-17, Pl.'s Br. filed July 17, 2012, Ex. 6 at 57; see also Pl.'s Br. filed Oct. 16, 2012, at 3. Mr. Konczak gave his understanding that the "real estate taxes . . . were to be reimbursed." See Konczak Dep. at 57:19-25, Def.'s Resp. to Pl.'s Resp. to Def.'s Prop. Findings of Uncontr. Fact, filed Aug. 15, 2012, Ex. 1 at 57. Mr. Konczak also testified that he would not have signed the Lease as written if 2006 was the base year and that he would have raised the rent if Ms. Asberry insisted that 2006 should be the base year. See Konczak Dep. at 116:14-20, Def.'s Br. filed June 15, 2012, App. at A138. Mr. Konczak's understanding of the "base year" may have been grounded in his conversation with Ms. Asberry as she wrote in the PNM that the "base year is the year the lease is effective." Def.'s Br. filed June 15, 2012, App. at A140.

The discussions between Mr. Konczak and Ms. Asberry are key to the parties' underlying intent regarding the payment of real estate taxes. If ¶ 17 embodied the parties' understanding based upon their prior discussion of real estate taxes, the inclusion of ¶ 17 in the Lease would not trigger plaintiff's duty to question the contracting officer regarding the meaning of the provision. The parties dispute what Ms. Asberry told Mr. Konczak regarding base year taxes and the payment of real estate taxes. Because the court cannot weigh evidence or make credibility determinations on a motion for summary judgment, resolution of this genuine issue of material fact must await trial.

The court advised the parties about the risks associated with proceeding on the basis of witnesses who are less than apt. The record as reflected in the factual recitation was disjointed and difficult to reconcile. For example, the deposition extracts of Mr. Konczak and Ms. Asberry appear in scattered appendix material to briefs and proposed findings of fact and responses. Trial likely will not add rationality to the parties' course of dealing.

The court explored with the parties the possible roles of the doctrine of mutual and unilateral mistake. Both rejected the former. See Pl.'s Br. filed Apr. 30, 2012, at 11-12 (arguing that Ms. Asberry alone made a mistake of fact or law); Def.'s Br. filed Oct. 31, 2012, at 1-2 (arguing that mutual mistake must be about a fact that already exists and as to each party must be the same). Plaintiff argued that Ms. Asberry's mistake was unilateral and

9

therefore did not provide the basis for reformation. See Pl.'s Br. filed Oct. 16, 2012, at 1, 5-6. Defendant took the position that plaintiff's mistake in judgment does not constitute the clear-cut clerical or arithmetic error that would qualify as a unilateral mistake. See Def.'s Br. filed Oct. 31, 2012, at 5-6. The court observes that the parties' cribbed formulation of these doctrines hamstrings not only resolution on summary judgment, but also an appropriate resolution of a bizarre contractual impasse that the rules of contract interpretation may not resolve satisfactorily to either party.

IV.  Real estate taxes due in 2006 and 2007

In addition to a declaratory judgment, plaintiff seeks reimbursement for payment of real estate taxes due in 2006 and 2007 for the amount exceeding the base year taxes. See Compl. filed Apr. 27, 2011, ¶¶ 38-41. The court finds that, regardless of how the Lease defines the "base year" for purposes of calculating tax adjustments, plaintiff is not entitled to damages for taxes due in 2006 and 2007. Paragraph 3.4 unambiguously states that plaintiff must provide the Government with a proper invoice and evidence of payment "within 60 calendar days after the date the tax payment is due from the Lessor to the taxing authority." See Def.'s Br. filed June 15, 2012, App. at A11. Paragraph 3.4 states in bold capital letters that the Government is responsible for payment of taxes in excess of the base year taxes only if plaintiff complies with the 60-day requirement. Id. The parties do not dispute that real estate taxes are due on July 1 and December 1 of each year. See id., App. at A324-26. Plaintiff admits that it submitted an invoice to NOAA for the property taxes due in 2006 on or about January 7, 2008. Id., App. at A333. Plaintiff also admits that it submitted an invoice to NOAA for the property taxes due in 2007 on or about October 20, 2009. Id. Because plaintiff did not submit these invoices to the Government within sixty days after the tax payments were due to the city, plaintiff has not complied with the invoice requirements of the Lease. See id., App. at A11. Under the unambiguous terms of ¶ 3.4.D., plaintiff consequently has waived its right to receive payment in excess of the base year taxes for taxes due in 2006 and 2007.

## CONCLUSION

Accordingly, based on the foregoing,

**IT IS ORDERED**, as follows:

1. The Lease is reformed to incorporate ¶¶ 17 to 21 on Sheet 2b.

2. Plaintiff's motion for summary judgment is denied.

   3. Defendant's cross-motion for summary judgment is granted with respect to payment for taxes due in 2006 and 2007.  Defendant's motion is otherwise denied.

   4. The parties shall file a Joint Status Report by January 22, 2013, proposing a location for trial and a schedule for pre-trial filings, the pre-trial conference, and trial.

              /s/ Christine O.C. Miller
              _____
              **Christine Odell Cook Miller**
              Judge